Mr. Kendall for the petitioners, Ms. Costa for the respondents, Mr. Freeman for the United States Department of State. This is Judge Griffith, counsel. We welcome you and thank you for participating today.  We're all dealing with a new way of hearing one another, hearing arguments. So if you will be patient with us, we will be patient with you. Let's begin with Mr. Kendall. Good morning. May it please the court, this is David Kendall. I represent Petitioner, former Secretary of State Clinton. I will also be presenting argument this morning on behalf of co-petitioner Cheryl Mills. I want to first address the two questions this court identified in its May 14th order that I wanted counsel to focus on. First, mootness. This case is moot for a number of reasons. First, the petitioners have no emails whatsoever left to produce. Nobody disputes that. In December 2014, at the request of the State Department, Secretary Clinton provided all of her then existing emails that were either work-related or potentially work-related, and Ms. Mills produced all her records in 2015. Secretary Clinton has declared under oath numerous times that she's produced all such emails in her custody. And respondents make no claim that petitioners have anything left to produce. Mr. Kendall, this is Judge Griffith. On the record before us, how can we hold the cases moot? Judge Lambert's most recent order noted that the State Department continues to produce new emails, and one of those suggests that there may be undisclosed text messages as well. Typically, we require jurisdictional facts to be determined by the district court, and hasn't Judge Lambert here found that there may be more out there? Judge Griffith, three responses to that. First of all, it's true that the Department of Justice in the December hearing said it couldn't identify where some of the emails the FBI had given the State Department came from it was still working on. But the Department of Justice has now determined these are not new at all. These are not new emails. In a recently filed memo in another Judicial Watch case, this one before Judge Walton, Judicial Watch v. Department of State 12-CD-2034, imposing Rule 56D discovery, the Department of Justice filed a memo on April 30th saying these emails were not new at all. They'd been in the possession of the State Department originally. Second, the standard in FOIA, as this court has said many times, is not one requiring the absolute production of every possible record. What's required is a good faith search, a good faith and reasonable search. And the fact that a few documents turn up later does not impugn that search. And finally, with regard to the text messages, there's really, again, these two petitioners have nothing to contribute there. All of the Secretary's existing cell phones were given to the FBI in 2015. Those have been analyzed. Judge Bozberg found in the Tillerson decision, which was the case right before it came up, this court is Pompeo, that the FBI searched the phones the Secretary turned over, and none of the phones contained relevant records. So I think mootness is clear. I think it was clearly established in Pompeo when the court affirmed the decision of Judge Bozberg dismissing a suit brought by Judicial Watch to compel production records under the Federal Records Act. Two years earlier, the court had reversed and remanded an earlier dismissal to see if any more emails could be obtained, quote, by shaking the tree, close quote, as this court put it. The district court then conducted further hearings and ultimately concluded that no imaginable enforcement action could lead to the recovery of more emails. Mr. Columbus, I'm going to direct your attention to Judge Landry's order, and I'm looking at the carryover paragraph from page 1 to page 2 of that order, and I'd like you to respond to this sentence at the bottom of page 1. State failed to fully explain the new emails' origins when the court directly questioned where they came from. Is that accurate? It's accurate that the petitioner for, I'm sorry, the counsel for State Department, Mr. Pezzi, said that they were still working on the origin of those emails. So I think it's accurate this order was filed, Judge Landry filed his order on March 2nd. But as I mentioned in this other case, and Judicial Watch should be well aware of this, the department has answered that question by saying these emails are not new at all. They were formerly in the presence of, in the custody of the State Department. So I think it's clearly the Justice Department has closed that loop. And then the next sentence, furthermore, State has not represented to the court that the private emails of State's former employees who corresponded with Secretary Clinton have been searched for additional Clinton emails. Is that accurate? Some, it's not entirely accurate because as Judge Boasberg's opinion in Tillerson, and that site is 293F sub 33 at page 45, as Judge Boasberg reviewed, indeed the FBI has searched many and has interviewed many of the people with whom the Secretary emailed. So they haven't, I can't say that they've interviewed every last one, but certainly emails have been collected from a variety of sources, which typically duplicated the emails we turned over from the Secretary's server in December of 2014. Thank you. Mr. Kendall, this is Judge Wilkins. The follow-up on Judge Griffith's questionings, would it be, why wouldn't it be relevant for the sake of argument to depose either Secretary Clinton or Ms. Mills to clarify who may have corresponded with either of them or in general about the Benghazi talking points, since that's what the FOIA request is directed to? Judge Wilkins, for a variety of reasons. One, that information is already available in the emails that State has. Two, from CC, all those people are there and available for Judicial Watch or anybody else to see. Many of them have already been contacted, as I mentioned, by the FBI and interviewed. A deposition about that would have no relation to the one issue in a FOIA case. Are there any more documents to produce? One of the reasons there is so rarely discovery in a FOIA case is that the issue is document production. An agency does not have to explain what has no documents. It doesn't have to do further work except that it does have to conduct a reasonable search for responsive documents that are not exempted by one of the nine exemptions. So the case would be moved because, A, the provision of no more emails to produce, the information is already out there, and this is a FOIA case. It's not some kind of a different investigative case. A search has been done. This court, in a 1982 case called Perry v. Block, 684 F. Sec. 121, said that once documents have been produced, we are not authorized to make advisory findings of legal significance on the character of the agency conduct vis-à-vis any requester of information. In sum, if we are convinced that appellees have, however belatedly, released any non-exempt material, we have no further judicial function to perform under the FOIA. Mr. Kendall, this is Judge Pillard. You assert mootness. You're not asserting that the whole case is moot, but just with respect to the petitioners here, Mills and Clinton? That's correct, Judge Pillard. We simply don't know. We intervened in the case that Secretary Clinton did when it became clear that her deposition might be an issue, but the only relief we seek here by mandamus is an order vacating the memorandum order of Judge Lambert insofar as it provides for depositions of these two parts. So I'm trying to just, as sort of a formal matter, understand the procedural posture here. We have a non-party witness, Ms. Mills, and ordinarily one might expect that she would be before the court because she would have been subpoenaed in the jurisdiction where she is present. She would file a motion to quash the subpoena. Then the district court, if the district court denied that, then it would be before us on mandamus from that denial. But I gather that isn't what we have here procedurally. Procedurally? Can you fill us in on sort of – I'm just thinking about it's unusual, it's not unprecedented, but it's unusual to have a claim that a unit of a case or a subpart of a case is moot, and I'm trying to get my mind around what that subpart is. It's not a claim. It's what? The subpart is the order directing these two depositions. That was – those papers were presented to judge. The judge issued an order rejecting our arguments on March 2nd. So what the question here is – There's no subpoena. There's no – yeah, go ahead. Sorry. Go ahead. No, I didn't mean to interrupt. There's no subpoena, but certainly we were a party. The deposition would have been noticed. As we point out, the remedy of contempt, which would have been available to us, doesn't work because as this court ruled in the 1998 case in Ray Seward's decision, a case which I'm unfortunately very well familiar with because I argued losing side in the case. That case was a mandamus action brought by then-independent counsel Starr because we had gotten an order compelling him to testify. He said that contempt – he said that he had no adequate alternative remedy. This court, and I argued citing the Papandreou case, just as Judicial Watch does, and this court said not so fast there, said it more elegantly, of course, but it noted that there was no remedy because, first of all, the order wasn't final, it wasn't appealable, and secondly, you couldn't tell whether the court was going to impose civil or criminal contempt. Right, right. So there's been no – I mean, you said the deposition would have been noticed, although Ms. Mills is not a party. She's a non-party witness. It's Secretary Clinton who intervened. So they just asked her, and she didn't require that there be a notice of deposition. I think that after the order, certainly the order was giving Judicial Watch the right to depose the secretary. So I think that is where – that's the present posture of the case and Ms. Mills. And Clinton intervened, so the court had jurisdiction over her because she voluntarily wanted in, and now she basically is saying, no, moot, and she wants out. So I understand substantively you're making a claim of mootness, but I'm trying to get – as I said, I'm trying to understand the sort of procedural door through which that goes or the procedural unit that you would say that applies to. So mandamus is an extraordinary remedy, and I wonder if you have the best case you can point us to where mandamus was granted to prevent a district court from authorizing discovery that was beyond the bounds of relevance in the case. I mean, I know you've framed this as mootness, but putting that aside for a moment,  these depositions are irrelevant or cumulative or both. There's just nothing that can legitimately be pursued through these depositions. Then it really looks more like a case where the question is a district court's management of discovery. I know you cite the Apex Doctrine. The district judge was careful to say we're not allowing inquiry into the substance of the decisions that were made. We're talking about finding documents. These are former, not current, officials. So I gather the interest that applies here is the third interest, which is would people be deterred from serving. So I'm not sure how powerfully the Apex Doctrine just forsake of argument. If we were to put that aside, we have a situation here where the district court arguably has gone beyond what is relevant. Best case, mandamus from our court or any court in a case where there's been an allowance that's discovered beyond the bounds of relevance? I think the Inouye District Court case is certainly one. I think that in the Pompeo decision itself, and that was not a mandamus case, but Judge Boasberg did note that he was applying a mootness standard with more teeth than the FOIA standard. I think we've made clear that there is protection of former officials in a number of different cases. We cited former governors, former EPA administrators. Usually those cases don't require mandamus because the district court judge grants a motion to quash or for a protective order. Here, mandamus is necessary because, as I've said, it's not an appealable order, and the district court judge himself has determined that the depositions will go forward. Judge Kohler, did you have further questions? I don't want to interrupt your line. No, go ahead. Thanks. Just following up on Judge Kohler's questions, the doctrine about no other avenue for relief because you don't know whether contempt is going to be civil contempt or criminal contempt, and only criminal contempt is directly appealable as an interlocutory order, that line of cases applies to parties. Secretary Clinton is a party because she intervened under Rule 24, and that was granted, but Ms. Mills is not a party, and so that line of cases does not apply to Ms. Mills. Instead, the line of cases that apply to her is that a non-party is supposed to be subpoenaed and move to quash, and if that's denied, then refuse to comply and be held in contempt, and regardless of whether that's civil or criminal contempt, then that non-party can appeal that order. Isn't that correct? Judge Wilkins, it's certainly correct that Ms. Mills did not technically intervene. She was treated, though, as a party before the district court, and the order applies to her equally. So I think the arguments that Secretary Clinton had fully cover Ms. Mills, plus the fact that Ms. Mills was deposed at length by Judicial Watch back in June of 2016 on these very same issues, so she, I think, has an additional claim. Was that deposition a part of this case or another litigation? It was a part of the litigation before Judge Sullivan, 13-CV 1363. I'm just not certain. In the Judge Sullivan case, there were eight depositions. In this case, there have been 18 depositions. I just am not certain. As I said, I can easily check it as to which. No, I think you're right. I think you're right. Okay. Mr. Cato, this is Judge Griffith again. How burdensome would these depositions be? They would be very burdensome because the issue here, as the State Department puts it, is simply discovery for discovery's sake. They would be done by video, and the real purpose of the depositions is harassment. It's the creation of video footage that can be used for political, partisan attack ads and social media fundraising. It's not authorized by the FOIA. It's in a moot case. As the Supreme Court has said, the court doesn't have power to decide questions that can't affect the rights of the litigants in the case before them. Why doesn't it need to be done by video? Or why couldn't the video be sealed? I mean, if you're right, they're not going to last very long. Well, there's no assurance of that. Certainly, you could seal something, but the standards for sealing, as I need not remind this court and as a lawyer sometimes representing news media, those standards are not very reassuring, finally. Why doesn't it need to be done by video? That has been the practice in the case, I believe, and I haven't been in the case. Ms. Kocher can correct me if I'm wrong. I believe most of the cases have been done by video, and it's just a practice in the case. What I'm getting at is there is a line of cases out there in which mandamus is used to manage discovery. But in those cases, the interests seem to be more substantial. You have deportation proceedings. You have death penalties. Here, it seems you have a nuisance. There's no question about that. But if you're right, the line of questioning won't last very long. It will be over and done pretty quickly. And so, again, asking this all in the context of mandamus is extraordinary. It's a rare device and even more rare when we're talking about discovery. And so I'm just trying to get your sense of the interest at stake here. Well, the harassment factor is a real one. Ms. Mills was deposed, I think, for six hours. The point is that this does not relate in any way to the disclosure of further documents. Everybody agrees that under FOIA, discovery is very, very rare, only in extraordinary circumstances. So in that regard, I think there is a clear violation. And I think everybody admits that mandamus is an extraordinary remedy. But it is available when the three-part test is met. Is there a clear and indisputable right? Is there no other avenue of relief? And is it appropriate under the circumstances? Here, in a case where you've already had 36 depositions in FOIA cases, nobody gets that kind of discovery. The purpose of this discovery, even if it were sealed, is simply harassment. It's not authorized by the law or by court precedent. Okay. If there are no further questions from my colleagues, we'll give you a couple minutes back on rebuttal. And thank you. And we'll now hear from Judge Judicial Watch. Good morning. May it please the Court, I am Ramona Koch on behalf of Respondent Judicial Watch. In light of the Court's order, I will also begin with the issue of mootness. This Court's holding in Pompeo does not moot this case based on the facts that are known today in the record. These facts can be categorized in two different categories. One is new Clinton emails. And the second issue is limitations with respect to the FBI's investigations that are relevant in this case. To quickly address the new Clinton emails, it is not in this record before the District Court that these emails the State Department had before. And the information that Mr. Kendall had referred to earlier, even if assuming those emails were within the State Department's position at some point, that doesn't answer the question, why is it that four years after the FBI closed its investigation, that there are still additional Clinton emails that are being produced? Why were they not searched or located or produced earlier? Ms. Koch, this is Judge Wilkins. What is in the record is the transcript from the hearing when those emails were discussed with the District Court. And that's at docket 156. And there, I'm not sure if it was you, but it was counsel for Judicial Watch, said that those 30 emails were not responsive to this FOIA request. The quote is, we understand they're not responsive in this case. So you are saying that these 30 emails prove something, but they are not even emails that are related to the Benghazi talking points that your FOIA request is regarding. So what significance do they have? The significance is that they identify a subset of Clinton emails that were not previously identified or searched. And to answer the ultimate question in any FOIA case is, while the objective is to get to the documents and for production of the document, the issue before the court and the ultimate question is, was there a reasonable search that was conducted? So if we do not know where all the subset of Clinton's emails exist, that is the purpose for why the District Court has ordered this additional discovery so it can be able to develop the record that it needs to reach the determination of what is a reasonable search in this case. And I would just point out that one- Ms. Kaczmar, can I just interject? My understanding is that at the moment when there was an exchange before the District Court, the State Department said they're not relevant to this case and we're not exactly sure where they come from, you know, standing up there. But then State then did determine that they are not new at all, that they were in the State Department's possession, and therefore they were searched. So I understand what you're saying, that there's this concern. If there's a category even of nonresponsive emails that is showing up belatedly, notwithstanding various investigations and Federal Records Act recovery, then you think, oh, we have a leaky vessel here. But I think that inference is unfounded on the public record that actually there was no leaky vessel, that State had those and they were among the body of documents that State did search. So if that is accurate, then I'm not sure I follow the implication. And if it's not, let me know why you think it's not. Sure. I don't believe that the – I believe that the record is that the State Department did not search those emails until the FBI identified them in November of 2019. And the – That's not my understanding. My understanding is that they looked at them and they realized that they were among the body of emails that they had searched. I believe that they only looked at them because of the FBI identified them in November of 2019. And that is why the district court in its order pointed to the fact that why are there additional subset of Clinton emails that are being looked at four years after the FBI closed its investigation. And part of the reason that the district court permitted the additional discovery is because it was troubled by the fact that the State Department could not provide an explanation from where these emails came from. And to address your question with respect to the fact that now State has come to say that these emails were in its possession all along. However, that's what begs the question here and the question with respect to the leaky vessel. Because Clinton used a private email and a private email server to communicate while she was at State, her records even within the State Department are not known where they exist because they can be dispersed all over the State Department. So perhaps they were on the state.gov email system, but State Department didn't even know when it searched this case to look in those places for Clinton related emails or Benghazi talking points related emails. And that is still a question here. I'm a little confused by that. I haven't heard that line of argument before. You're saying that you can't be confident in the State Department's search because it's unclear where the recovered emails that have been brought back into the State Department pursuant to the Federal Records Act are within the State Department? No. So the State Department does not say actually where these emails or how it was that it was in possession of these 28 emails. It does not say that it was among the 30,000 emails that Secretary Clinton provided to State in 2014. And it does not state that it was among the emails that were recovered by the FBI investigation. It just says that State Department was in possession of the emails. The question is, was it in possession of the emails because it's on state.gov email address, because the recipient of an email with Secretary Clinton was somebody else outside the Secretary's office, which is the office that was relevant to Judicial Watch's request in this case. So if her records, I'd like to perhaps if I illustrate with the example of the IRS. In 2013, it was disclosed that the IRS had lost years of Lois Lerner's emails. What the IRS did in that case to be able to conduct a comprehensive effort to recover or locate all of Lois Lerner's emails, it had identified 120 custodians with whom Lois Lerner most likely communicated with while she was at the State Department. And Lois Lerner was not the head of the agency. She was just the director of the department. Here, the State Department has searched four custodians outside of the emails that Secretary Clinton provided to the State Department. They include Petitioner Sharon Mills, Kuma Abedin, Jacob Sullivan, and Phillip Brains. We know that there are more individuals within State Department even that Secretary Clinton communicated with. And the reason that we need to get to the question of under these circumstances, was there an intent to evade FOIA? That's a critical question in this case that must be answered. I don't understand why that question has to be answered. We want to ask you about that. If the question is whether there's been an adequate search, what difference does it make whether what the intent was or reasons for using a private server or Secretary Clinton's or anybody else's understanding of states' record-keeping obligations? How does that prove or disprove whether this search that has been conducted since Secretary Clinton left office was adequate? So to be able to get to the question of whether the search is adequate, this court has repeatedly held to determine reasonableness in FOIA. You must look or the district court must look to the totality of the circumstances. And on the issue of intent to circumvent FOIA, we get to that because of footnote 9 in the Kissinger case that the Supreme Court held. If in a case where you have an agency head who used private email and a private email server that was housed in a basement of her Chappaqua home, if that shows that there is an intent to evade FOIA, then greater effort must be done to locate all of the missing records. So the question I have, I understand that under the Federal Records Act, the government has a duty to make sure that official agency records are in custody and officials have an obligation to comply with policy to ensure the same, which is why we asked you about the Pompeo decision because it isn't FOIA that creates an obligation and an authority to reach outside an agency to bring back documents. It's the Federal Records Act. Am I right? Well, no. If there is evidence under Kissinger, the footnote 9, if there is evidence that the agency had intended to circumvent FOIA, then the court does have jurisdiction. I mean, this was a circumstance that was not before the Supreme Court, but the Supreme Court did envision this happening. No, it wasn't. No, it doesn't. So they talk about what's in the control of the agency at the time of the search. We need not decide whether this standard might be displaced. I'm reading from the Supreme Court footnote. In the event that it was shown that an agency official purposefully routed a document out of agency possession in order to circumvent a FOIA request, no such issue is presented here. We express no opinion as to whether an agency withholds documents which have been wrongfully removed by an individual. No opinion, and if that's your strongest authority, I'm just not sure in a FOIA case where you think the district court has the authority or the duty to discover and reclaim documents that might be outside of the agency's possession. Well, the most recent decision is this court's decision in the CEI case. There, the official was using a different email account, and the district court held that an agency official cannot shield agency records by using a different email than the email account, the official email account. Right. So all of the reason we're very interested in the interaction between this case and the Tillerson-Pompeo case is that our court has held that the Federal Records Act obligation to unwind the removal of the email or the housing of the emails outside the agency, that has been unwound. Those emails have been brought back, and the FBI, which has every incentive to and power to look into that, including forensic, electronic searches and the like, has said, this is done. And our court, more importantly, has said, this is done. So it's really hard, I think, to follow an argument that says, well, maybe not. And I think that's what we're probing. Why the state of mind? The state of mind is not required to be shown, not relevant to a Florida case. Well, it is with respect to understanding the totality of the circumstances. Where are you getting the phrase, the totality of the circumstances, in terms of case law? Where did that come from, your totality of circumstances test? Sure. The Safeguard Services case, it is a D.C. Circuit opinion. Yeah. Okay. To answer your question with respect to the Pompeo holding by this circuit, it is important to look at this court's holding in Pompeo, and the record before it, as well as the record in the Tillerson case, to the fact of what the FBI did, not the characterization of its efforts. FBI was limited in what it did. And the fact that the 28 new emails have appeared show that. In addition, the district court, and you can see this on page 4 and 5 of the district court's March order, it was not convinced that all avenues for Clinton emails have been looked at. And that is the reason, one of the reasons, why the district court permitted Judicial Watch to serve a subpoena on Google for Secretary Clinton's email from Paul Combetta's Gmail account. And has that been done? Did the Google search take place? Yes, it has. And that's why I want to, it is not before, it is not in the record here because this is new recent development. I understand. Right. It's recent development since the briefing. So there has been a search and a response, and according to Google's response, it appears that there are 260 Clinton emails that appear to be work-related and appear to not have been previously identified either in the emails that Secretary Clinton provided to the state in 2014 or among the emails that the FBI recovered and turned over to the State Department. From what time period are those emails? Yes, and that is, this is from 2010. Now, these emails are not responsive in this case because they predate the Benghazi attack. However, it shows that it is another subset of Clinton emails that have not been looked at by the FBI or the State Department. How can you use a subset of emails that don't need to be searched because they're not even possibly relevant to your FOIA request to show that there's some sort of a problem with the search? Because we don't, the reason that we look at that, and the reason it is significant, is because it shows that there's another source for potentially responsive records. It would have some significance if they were from the time period where it possibly could relate to your FOIA request. But if neither of those are true, then I don't see how it has any significance at all. Well, I think the significance is that even today, the State Department still does not know what is the universe of Clinton's emails from the State Department. That is the significant issue here. And I just want to point out very quickly, the 260 emails are actually from only a three-month period, from October to December of 2010. And if the court would like, Judicial Watch can supplement the record to include the subpoena and the response. I think you're right that that's not before us. The question is whether there's anything more than mere speculation that there are documents that if State Department ran more searches, it would uncover. And in this case, there's not a Federal Records Act claim in this case. So, again, I'm curious where you find in a FOIA case with respect to one set of talking points and documents related to it, the authority or duty of the district court to look outside State Department custody and look for documents that might exist. Saying that there is some speculative chain of inference based on a different year and a different set of emails, I just don't follow how FOIA leaves you there. I mean, seriously, I just don't. And when you point to footnote nine in the Kissinger case, I don't think that helps you. And when you point to a safe card which actually says mere speculation, that as yet uncovered documents may exist, does not undermine the finding that the agency conducted a reasonable search for them. Well, I think the identification of the 28 or 30 new emails and these 260 new emails show that there are additional places to look. But what this shows is that the FBI was limited in its effort in what it did in Pompeo. And that's why it's important to look at the record to see what it did and how those limitations as to what the FBI did are relevant in this case. Because it is not uncovered. I mean, we in Pompeo, we're bound by our circuit precedent. And you can disagree with it. And you can say if you had run the FBI, you would have done a different search. But that's an extraordinary position to say that, well, you know, Federal Records Act cases closed because there are no remaining documents for state to recover. This court credited the finding of the district court. There are no remaining documents for state to recover. And you point to 28 or 30 documents, which, I mean, I understand those actually have already been in the possession of the State Department. You keep referring to them as if they weren't. So it's hard to see the avenue to question the thoroughness of the search and allow these depositions on this record. Ms. Kroenke, this is Judge Griffith. Following up on Judge Pilley's question. So what new information do you realistically hope to learn from these depositions that go to the question before us? And that's the adequacy of the question that's driven by FOIA. That's the adequacy of the search. What do you hope to learn realistically? Well, with respect to the issue of intent to throw FOIA, the reason we need to answer that question is to be able to then determine what grids must the State Department take if there is an intent by the agency head to circumvent FOIA. But, I mean, you know, Secretary Clinton has already answered that question, right? She's given an explanation why she had the server in her home. So are you expecting her to change her answer? Or is there going to be new evidence you're going to confront her with that will refresh her memory in a different way? Well, part of that, yes. There's been additional discovery that's been taken in the district court. And part of the reason that the district court ordered the additional discovery here, including the petitioner's deposition, is because after each round of discovery, there are more questions raised with respect to Secretary Clinton and her email use. For example, the question with respect to what was her state of mind when she left the State Department with 30,000 federal records and when she filled out a form and provided it to the State Archivist and identifying the documents she was taking, including electronic records, but omitted the fact that she took with her at least 12 banker boxes. That inquiry goes into what her state of mind was with respect to her email use. In addition, there are two instances in the most recent discovery that has taken place. I'm sorry. Remind me what that has to do with the accuracy of the search by the State Department in the FOIA. It has to do with how do we determine what efforts and what a reasonable search is under these circumstances. And that's why trying to apply the Pompeo holding, that the FBI did everything it could in the Pompeo holding, to this case is like comparing apples and oranges. Because what may have been reasonable for the FBI to do under the Federal Records Act is not the same as what an agency is required to do here under these circumstances, which are still being developed, to ensure that you have conducted a reasonable search. This is helpful because I actually – help me out with this because I see it actually quite the opposite, that yes, it's apples and oranges because under the Federal Records Act, there's actually an affirmative obligation to, you know, complete the official records of the agency. If they erroneously are taken away or wrongfully taken away, they are brought back. But once – really, the duty under FOIA is to search what are agency records. So the tool for filling out the roster of agency records is the Federal Records Act. It's protecting the roster and filling it out. The tool then for FOIA is to look at what the agency has. Not to go out and find more, but to look at what the agency has. And these two have worked in tandem because Judicial Watch has done a vigorous litigation campaign and both enforced the Federal Records Act and enforced FOIA. But we don't have that Federal Records Act claim anymore. That work, as our court has held in a binding holding, has been done. So yes, it's apples and oranges, but you have, you know, the tree. And it's the tree. And go pick what's on there. But you can't, like, ask the district court to, you know, find more trees. Well, one point – Unless I'm missing something. That's what I find. Go ahead. One point that I – to respond to your question is the characteristic of a federal record, and this is what CEI talks about in other cases that discuss about attempts and recovery efforts of records under FOIA. The characteristic of the federal record is not lost just because it is taken outside the agency. And the same, for example, with the Google emails. Those emails, just because they are outside the State Department's possession at this time, does not mean that they've lost their characteristic to be a federal record. So that is why you need to – it is respondents' position that the court needs to look at what the circumstances are to be able to reach, of what the State Department needs to do in this case to ensure that all responsive federal records have been looked at and all potentially responsive federal records have been looked at. Just a slightly separate question. What are the four documents that were produced? That were initially produced in response to FOIA. The four responsive records that you've received so far in this case. The initial four documents, I believe their email came, and they were all produced in a separate FOIA case that was earlier, also about Benghazi Talking Points. But that FOIA request went directly to Ambassador Susan Rice's office. That request did not ask for records from Secretary Clinton's office. Just so that we're clear, on page six of your response, you set forth the FOIA requests that are at issue here. And the two requests, or it's really one request with, I guess, kind of two parts that you describe at page six, it relates to these Benghazi Talking Points provided to Ambassador Rice regarding a September 16th television appearance. Is that right? Correct. So all of this, examination into general email practices and state of mind and everything, is so that we can determine whether a search about some subset of documents related to one incident has been adequate. That's where we are right now, right? Yes, but I guess it's a multi-step process. I guess that's maybe another way of saying it. It's certainly a multi-step process. It seems like it's been about a several dozen step process. Well, no. To be able to determine if there's adequacy of a search, the State Department and the agency needs to know where to look for the records. And based on the record and the information that's been available, even with these new 28 emails, it appears that the State Department does not even know where all of Clinton's emails are. And that is part of those discoveries that are being requested here. I mean, we can ask them, but I don't believe there's a question whether they know what's in their possession and that they've searched every plausible place within their possession. You're talking about that they might not know where things are they're out of the Department's possession? Is that what you're referring to? No, even emails that are within the State Department's possession, the State Department does not know where all of Secretary Clinton's emails are. The 28 emails, it was revealed by actually the director of the FOIA Department at the State Department in a deposition in the discovery below, that the State Department, upon receiving those emails from the FBI, searched those emails because they were potentially responsive in this case in November of 2019. And realized when they did so that they were the same as emails that the Department already had in its possession and had searched. No, that last portion, I don't believe that's in the record. The State Department has not stated that those emails were previously searched. That hasn't been stated in any other litigation? Well, those emails were produced in another FOIA lawsuit that has requested all of Secretary Clinton's emails. And that has stated that those emails were not previously produced or searched for Clinton emails. I'm not aware of the State Department to date taking the position that those emails were searched in this case because they are Clinton records and they are potentially relevant and responsive, that those were searched at any point prior to November 2019. Okay. Any further questions from Judge Peller or Judge Wilkins? I guess I just want to be clear about something. When you say that it's not clear that those emails have been searched for this case, meaning with respect to this specific request for Benghazi talking points, but the emails have been produced to you in another case, right? At around the same time frame. Yes, they were produced. Well, actually, they were produced a couple of months later. They were produced in January, I believe, the first half, and then the second half was produced in February. I'm sorry. January of what year? Of this year. And then... Did I get it? Go ahead. No, no, go ahead. They're not responsive in this case. No, but they were just produced in the case that requested for all of Clinton's emails. In a case where the FOIA request is not at all limited by subject matter. The State Department just produced them in January of 2020 and February of 2020 and just identified them in or around November of 2019. They were not previously produced. Just to go back to the question of FOIA and FOIA remedies. So under FOIA, a plaintiff's entitled to an adequate search and with respect to the fruits of the search, either production or sufficient justification of exemptions justifying their non-production. And I take it here that the only aspect of the relief that you're disputing in this case is the adequacy of the State Department search. Is that right? Well, there are additional issues that are still pending before the district court, including the adequacy of the search as well as litigation misconduct in this case. And the district court actually, I believe in its March order, said that it was in fact the State Department's conduct in this case that opened the discovery in the first place. What was your understanding of what he meant by that? I wasn't entirely clear about that. That the State Department had opened the discovery, the State Department's conduct. Your understanding of that is? Yes. So discovery in this case was permitted for three main issues. One is the intention for FOIA and the adequacy of the searches, the second one, which is actually listed as number three in the court's discovery orders. The second issue where discovery has been permitted is bad faith or litigation misconduct. Whether the State Department's attempts to settle the case in 2014 and early 2015 amounted to bad faith, that's the one you're referring to? Correct. What would Secretary Clinton or Ms. Mills have to say on that? Neither of them was working at the State Department at that time. In 2014, at the time that the State Department was attempting to settle this case and represented that it produced all records, the State Department was in communication with Ms. Mills with respect to the search and the production or the return of Clinton's emails to the State Department. The reason that we require Ms. Mills' deposition on this issue is to be able to determine what discussions there were with respect to the parameters of the search of Secretary Clinton's emails, which is parameters of research is always relevant in FOIA, but also with respect to what State Department employees knew and when those discussions were being held. The idea is that they would have talked to her about their litigation decisions, about timing of summary judgment, and not following what... Those State Department people have been deposed, directly asked about this conduct. Am I right? Yes, and there's testimony. There's lawyers and people who handle FOIA and people who knew it was coming in and coming out and people who do computer programming. All those people have been deposed, right? Correct. Why Ms. Mills' testimony? What's the missing link it's going to fill in? Ms. Mills' testimony will be with respect to the parameters of Secretary Clinton's search and also with respect to what was the... Secretary Clinton's search? What's at issue here is the State Department search, so I'm not sure what and how the parameters of Secretary Clinton's search have anything to do with the State Department's misconduct in trying to settle the case, which is the issue you're pointing to. So just walk me through it more deliberately. Sure. The State Department's search in this case depends on the adequacy of all the different searches that have been provided. So we can't ignore, I mean, at this point, and actually it was the State Department's FOIA director who raised in his deposition that the State Department has to know what the parameters of Secretary Clinton's email search was, and he said that he requested that then Undersecretary Patrick Kennedy request that information of Secretary Clinton or her team, perhaps Cheryl Mills, but to date, based on the record, we do not know yet whether that conversation took place, and according to Mr. Hackett's deposition in the discovery below, as of the time that he left the State Department, he did not know whether that discussion occurred between Patrick Kennedy and Ms. Mills. Which discussion are you talking about? Mr. Hackett had a discussion with Undersecretary Patrick Kennedy when the emails were provided by Secretary Clinton's team to the State Department that the State Department must know what the parameters of the search was that Secretary Clinton's team had used in searching her emails to be able to determine what emails are federal records and what should be returned to state. According to Mr. Hackett, when he was asked, do you know what the parameters, was that ever provided to you? He was the director of FOIA, and his response was no. I had a discussion with Patrick Kennedy, and his understanding was that that was going to be asked or discussed with Ms. Mills or somebody within Secretary Clinton's team. However, that is one piece of the puzzle. Okay, I'm not following. I'm not following. Because the documents that are in the State Department are there and have been searched. The documents that are not in the State Department, the personal emails, and I gather what you're saying is that there's some suspicion whether the people who sorted the official from the personal were doing that in a rigorous way or whether they were, in fact, putting in the personal box things that should have been returned to state. Is that the point? Yes. That's the idea, right? Yes, and the State Department's archive has testimony that was taken in the district court. That he didn't know. That they didn't know, but no, in addition to that, she testified that in the normal course, when an official leaves the State Department, takes with them a source of federal records with them, it wouldn't actually be that official who would be conducting the search. It should be current State Department employees to conduct the search. That was the testimony of the State Department archivist, who was the archivist actually during Secretary Clinton's tenure. Right, and the link between that and a FOIA claim, not a federal records act claim, not a FBI investigation, but a FOIA claim is what? I'm sorry, can you repeat the question? What is the link? So you say problem. Somehow Secretary Clinton, unlike other officials who left government and took with them documents that should have been left in the custody of the government as agency records, somehow she was able, with her team, to do the sorting. That's irregular, shouldn't have happened, raises the question, was it done in a way that was rigorous and actually resulted in the return to the agency of documents that should be considered to be agency records, right? That's the gist of what you're saying? Correct, correct. And my question to you is, what under FOIA gives you any entitlement to question that and or the district court and makes that relevant to the adequacy of a search of documents of agency records at the State Department? What in FOIA makes that a remedy that flows from the statute? Well, I believe, actually, the Supreme Court, both in the Kissinger case as well as in the case that is cited in the Kissinger opinion from renegotiation board, the Supreme Court actually talked about the fact that under FOIA, the Congress did not intend to do away with the court's inherent equitable powers. So the case that we have here are the facts that before the district court. The fact where a serious question has been raised with respect to an agency's intent to circumvent FOIA when she used a private email and private email server. It's certainly within the authority of the district court to want to hear from the individual herself with respect to whether that was intent, but also with respect to how that search was conducted. Because that search or the reason that the issues to be adjudicated by the district court hinges in part on how that search was conducted. And what if somebody testified, what if either Mills or Clinton testified, well, things that had to do with, you know, what time I would leave work and, you know, meet my family for dinner were not included. And if the district justice will actually, those should have been official records because they have to do with, you know, the end of the work day or, you know, something. What if there were documents that someone else that you, if you were the one doing the search, would have put into the agency record box? What if there were? And now they're gone and unattainable. What results in terms of the FOIA power and the district judge? What should happen in your wildest dreams that you succeed in this case as a result of that? So under FOIA and, of course, inheritable powers, the district court is not saying here for the court to make that determination. The issue here is that it is the agency's role to make that determination. So it's not that the case where, okay, there may be some e-mails and then those e-mails are brought before the district court and the district court will decide is this a federal record or not. It is, the issue is identifying all sources where Clinton e-mails reside and for the State Department to do an adequate search. Now, if there are additional… The State Department now has every incentive to get to the bottom of this. Do you have any questions that that's the case? This is no longer… We do, actually. Secretary Clinton's State Department. This is the Trump State Department. Well, it doesn't matter the administration, but the issue is about… Well, it depends on the sense of whether you think what I gather you're saying is that there's some kind of cover-up. And so I'm just trying to understand why you think this is relevant under FOIA, the claim you brought, and as Judge Wilkins pointed out, a very narrow FOIA claim at that. And I'm trying to understand why this could be relevant, but maybe I'm beating a dead horse on that. I'd just like to note this respondent's position is not here that there's some sort of a cover-up, but respondent's position is that today, based on the record, there hasn't been an adequate search that has been done. Take the IRS case where Lois Lerner's emails were lost for several years. The IRS identified 120 custodians it has searched in an attempt to locate all of Lois Lerner's emails within the IRS. It couldn't have done it in any other fashion. The State Department has not done that here. The State Department has searched four custodians for responsive records. And I guess my point is the petitioner's attempt here is to short-circus this process by using the most potent weapon in the judicial arsenal to prevent the district court from ever being able to reach a determination of whether there was an adequate search. And part of that process has to be to identify all the file cabinets, let's say, that contain Secretary Clinton's emails. And those file cabinets are file cabinets within the State Department and also file cabinets with third parties outside the State Department. Okay, thank you. Any questions from Judge Pilgrim or Judge Wilkins? No, thank you. Thank you, Judge Pilgrim. We'll now hear from Mr. Freeman of the State Department. Thank you, Your Honor. Good morning. May it please the Court. Mark Freeman for the State Department. As the Court knows, this is one of dozens of FOIA lawsuits about former Secretary Clinton's emails that have been filed over the years. The State Department's approach to all of these cases from the beginning has just been to get through them, to respond to the FOIA requests, to push through any district court litigation, and bring all of these cases, and indeed the entire chapter, to a close. In this case, therefore, although we objected to the discovery in district court in a FOIA case, of course we did, we have not asked this Court to issue the extraordinary remedy of mandamus, and we have not supported the petition at issue here. I'd be glad to address any questions from the Court. Do you think this case is loose? We do not, Your Honor. I think as was alluded to earlier in the colloquy, the case as a whole is not moot, it is a FOIA case. And as we've just heard, there's still a very active dispute over whether the State Department has conducted an adequate search, and I assume Judicial Watch will eventually challenge the redactions and withholdings that we've made. But I'm referring to this element of the case, the Mills and Clinton component of it. Is this part of the case moot? Well, let me say a couple of things about that. As the Court knows, we've not taken a position on that in this Court, we've not asked you to issue the writ of mandamus, and we've not sought one ourselves. It does strike us that mootness is a strange rubric for that, I think as Judge Pillard was alluding to earlier. The Department of Justice in District Court made general arguments about how discovery is not needed in this FOIA case, and that the next step that should happen here is that we should file a second motion for summary judgment, file another declaration in which we explain all of the searches we've done, and why they're adequate, and why we're entitled to summary judgment. Now, in the course of making that argument, we made general arguments about how further discovery was not relevant, we did not address the specific depositions that issue here, in fact, we deferred to private counsel on that question, and that's why we've not... You did, Mr. Freeman, argue that the case was moot with respect to these petitioners in your filing, docket number 133, in the District Court. No, that's correct. We argued that there was no more, the argument there was that there was no more controversy with respect to the Secretary's state of mind. Right, there's no longer any live controversy to which these depositions are relevant. So it's kind of sounding in mootness, but also blending it with relevance. Right on. And your view, in terms of getting it over with, was like, okay, go ahead, do whatever mootless depositions, and then let us get to summary judgment where we can file a declaration and say what further we've done since the last declaration. That's right, Euron. One way to look at it is from the perspective of the Secretary and from the petitioners here, the March 2nd order was the first order in which they were required to be subjected to discovery. From the government's perspective, this case and many others have been going on for six or seven years. There's been a lot of discovery to which we objected, but that's all water under the bridge now. It happened, and in our view, the best way forward is, as we told the District Court in the most recent hearing, we'd just like an opportunity to file a motion for summary judgment. Are there responsive records that the state has not yet provided to Judicial Watch? Not to my knowledge, Your Honor. At the time of our motion for summary judgment in July 2015, there were five responsive records. In the intervening years, we've identified a group more. I believe the current total is something like 19. The additional documents came from additional searches voluntarily conducted by the State Department of, for example, emails just returned by Ms. Mills to the State Department. But to my knowledge, all of the responsive records have been identified to Judicial Watch. And, of course, the way this normally works in a FOIA case is we would then file a motion for summary judgment, and we would attach a declaration, a detailed, non-generic declaration that explains the searches that we've done and why we believe we've conducted, in good faith, a search reasonably calculated to identify the responsive records. You've heard your friend Ms. Cook's argument about why she believes the search is not going to happen. In this case, there's a lot of controversy. What is your response to that? I guess our response to that, Your Honor, is we've not asked this court to do anything about that. In our view, we'd just like to join the issue with that and file a motion for summary judgment in district court. And we do have issues, of course, with what she said, but our view is that that's a matter for the district court to decide in the first instance. To the extent that it's relevant on this petition, for example, she's saying that there were 30 new emails. My understanding of the public record is that those weren't new and, in fact, were in the larger body of Clinton returned emails that the State Department did already search in this case. Is that your understanding? Let me say a few things about that, Your Honor. In general, that's my understanding with a significant caveat. So, as you noted, that's not in the record of this case. There was a filing made by the Department of Justice, as Mr. Bennett noted, in the separate FOIA case pending in front of Judge Walton, that's number 12-2034, in which we explained that... You mean Mr. Kendall? Sorry, Mr. Kendall, excuse me. Mr. Kendall made earlier, in which we explained that these emails always had been in the possession of the State Department. Now, it doesn't follow that they were necessarily searched in the initial searches conducted by the State Department in this case, and that's because of the scope of this particular FOIA request. The FOIA request is not to the State Department as a whole. It's to the Office of the Secretary. And as our declarations in July 2015 made clear, we searched the relevant electronic databases in the Office of the Secretary and identified those document custodians or email custodians most likely to have records responsive to this FOIA request, searched them, and we argued to the district court that that was an adequate search. Now, we're past that. But the fact that emails may be in the State Department somewhere doesn't mean that they would have been normally searched in response to a records request or a FOIA request directed to the Office of the Secretary. They were subject to whatever rubric you were applying, both office, database, and search terms, but because they fell outside of the rubric that is not challenged as overly narrow in this case, they weren't, as you say, technically searched. Yes, that's my current understanding, Your Honor. I do want to be clear that we are still investigating so that we can provide the detailed affidavit that is required to move for summary judgment in a FOIA case. And our intent would be if when it comes time for a summary judgment motion in district court, if these 30, I think it's actually something like 24, emails remain relevant, even though, as noted, they're not responsive. At that point, we would provide a detailed declaration which would explain where they came from and how it came to be that they were searched finally. And the State Department believes that it has a sufficient record on which to determine whether its search was adequate? Yes, we believe we're entitled to summary judgment, but again, we're not asking this court to do anything about that. I appreciate that. Mr. Freeman, you've written that the government's decision not to seek mandamus, and I'm quoting from your response to Tree, quote, reflects the government's consideration of the totality of the circumstances in this unique case, end of quote. What are the circumstances to which you're referring there? Sure. I mean, obviously I can't get into privilege matters, but there are a few things I can say. I mean, as I started to say earlier, from Secretary Clinton's perspective, the March 2nd order, you know, was the first time that she was required to appear and give testimony in this case. From the government's perspective, this has been going on for a long time. There's a lot of water under the bridge. There's a lot of discovery already, but that discovery is done. The burdens fell on us and we shouldered them. And in our judgment, the best way forward is just to move to summary judgment. The other point is that, look, there's been a lot of discussion of the so-called Apex Doctrine. I've never thought of it in terms of that name. It's the set of cases that establish that it is an appropriate use of mandamus to vindicate the principles described by the Supreme Court in the Morgan case. Now, the government is very protective of that line of cases. We are aware that we have built up, over time, in this circuit and in others, a substantial body of case law that inures to the benefit of the executive branch by establishing the appropriateness of the use of mandamus in those circumstances. Now, we've built that body of case law by picking our fights, by choosing the fights that we take carefully. And without, again, representing anything about specific deliberations in this case, we take very seriously the decision about when to come to this court and ask the court to issue the extraordinary writ of mandamus. And we chose, in the interest of the executive branch, balancing the pros and cons not to do so here. So let me circle back to something I asked you before. I want to make sure that I understand. When I asked you whether there were more responsive documents, it seemed to me you indicated that you weren't sure, that maybe there are. Maybe there are. Maybe there aren't. Is that puzzling to me? This case has been going on for five and a half years. Why is there uncertainty on this fundamental point? No, I'm sorry. Let me be very clear about that. When I said I wasn't sure, what I meant was, I am confident that the State Department has conducted an adequate, indeed more than adequate, search in this case and has identified all of the records that we believe are responsive to FOIA requests. The uncertainty in my answer was only whether we have actually given those documents to Judicial Watch already or whether we have identified them for redaction and told them that they will receive non-exempt portions of them when we get to the motion for summary judgment. That's just a detail in terms of staging that I'm not at this moment sure of the answer to. But the Department's view is that we've conducted an adequate search, discharged our responsibilities under FOIA. We've identified the responsive records in that search and that we believe we should be entitled to file a motion for summary judgment  So are you talking about the underlying documents that were long ago identified or are you talking about something else when you say there might be documents that are still under a process of redaction? I'm sorry if I wasn't clear about this. In the time since July 2015, additional responsive documents have been identified through searches voluntarily conducted by the State Department. I believe we're up to a total of about 19 now. And it sort of depends on how you count because it's an email thread with an additional thanks on top of a new document. That's the ambiguity in the numbers. But we've identified every document through additional searches such as emails returned by Ms. Mills to the Department of State. Through additional searches of those records in an abundance of caution, just in the interest of putting this all behind us, we identified additional responsive documents and we've identified those. And if we haven't already, we would provide them to Judicial Watch as part of our production in this case. But that's it. And our view is that when it comes time to file a motion for summary judgment, that we hope the District Court will grant it because we believe the declaration we will provide in support of that motion will demonstrate that we've conducted an adequate search and met our other responsibilities under the statute. Thank you. Any further questions from my colleagues? One question. Of these 19 or so documents, responsive documents that have been produced, have any of those been outside the Office of the Secretary? I don't know the answer to that question. One thing that we have done in this case is we have, rather than contesting questions that we could contest, we've just tried to search everything that has come up. All of the 55,000 pages of documents that were returned by Secretary Clinton to the State Department, rather than litigate over whether those belonged properly within the scope of the FOIA request or not, we just searched them. The same with the 30 or 24 emails that came back. Rather than litigate about that question, we just searched them. So it may be, if there are documents outside of the Office of the Secretary, and I'm sorry I don't have the answer to that specific question in front of me, but if there are such documents that are responsive, it's because we went beyond what we had to do here in an effort to put this case behind us. Mr. Creeney, I think it was at least twice Ms. Koko referred to the IRS's reaction to the emails of Ms. Lerner, and contrasted that with the State Department's efforts here. Do you have a response to that? Only that, as we've argued in district court, we believe we performed an adequate search in this case, indeed more than an adequate search, and we would... What about the specifics that apparently there were only, I think the argument was there were only four correspondence to the secretaries that were questioned, whereas in the Lerner instance there were many more than that. Yeah. Your Honor, as to that question, and again, I know the court understands this, we chose not to ask this court to do anything about any of this. So we would expect to litigate this question in district court. But the answer to the question directly is that, in our view, that's a function of the FOIA-requested issue here. This was a fairly narrow FOIA request for a very specific set of documents from the Office of the Secretary. The Judicial Watch also submitted an identical FOIA request to the U.S. Mission to the United Nations that produced 1,400-plus pages of responsive documents because Ambassador Rice worked there, not in the Office of the Secretary. So it could be, and we may well argue this in a motion for summary judgment, that an adequate search in the context of this FOIA case was one to the available and likely custodians in the Office of the Secretary and that we discharged our FOIA obligations by doing so. But again, those are all questions that we've chosen just to push forward and litigate in district court. Mr. Furman, what's your view about an agency's obligation under FOIA if it is aware that there might be documents, agency records, outside of the possession of the agency? Well, in this court, of course, we've not taken position on that question. In our view, the ultimate question, as the court has noted, is the adequacy of the search that we do perform as described in our affidavits. And if that search, as this court has said, is conducted in good faith and is reasonably calculated to identify the responsive records, then it ought to be sufficient as a matter of law. And I'm just trying to, I mean, as you know, I was trying to understand where the district court is coming from and thinking that the intent of Secretary Clinton is relevant. And I'm just still really trying to get clear why it might be. Yes. Did you have any view on the position about the Kissinger footnote 9 that Ms. Kaka presented? Is that the State Department's reading of that case? Does the State Department believe that it has affirmative obligations to find and recover records that are not in its possession under FOIA? Your Honor, I think if you look at our filings in district court, you would see that we've not contested that question in this case. And just as a strategic matter, our view has been, you know, when those documents came back to the State Department, we could have before the CEI case in this court, we could have contested that they were not in the agency's possession at the time the FOIA request came in, and therefore we have no obligation to search them. But we've not taken that position. In fact, we just searched them. We voluntarily searched them. We voluntarily searched every set of emails that has come back to us that Judicial Watch has identified in an effort just to find whatever response to this FOIA request under even the broadest definition and turn it over. And so although we could have contested the question that you identified, we've chosen essentially to render it irrelevant by just searching. As I understand Ms. Kaka's position, though, she thinks that there is reason to believe, and maybe the district court also thinks that there is reason to believe, that there may be other individuals in the Office of the Secretary who also used private email. And if so, that the district court needs to know about that and that it has grounds under FOIA to authorize discovery into that. And I take it that's not the State Department's understanding of its obligations under this FOIA request? No, Your Honor, and, in fact, if you just look at the declaration in support of our motion for summary judgment way back in July 2015, this is document number 19-2 in the district court records, the Hackett Declaration. We explained there that, in fact, in addition to the records returned from Secretary Clinton, there were also we expected a, I believe it's footnote 10 of that declaration, we expected a rolling production of emails from Ms. Mills and I believe two others who had been in the State Department at the time and it turned out may have used private email. We asked for those records back. And some of the difference between the five documents, my understanding is that some of the difference between the five documents that were identified as responsive in July 2015 and the now 19 or so are documents that we obtained, were identified by searching emails returned by Ms. Mills and others to the State Department. So to the extent, our understanding is that to the extent there was a dispute about whether there were additional people in the state, the office of the Secretary who had private emails that would be agency records and would be responsive, we've asked them to return those records and we've searched them. And I don't think you took a position there whether that was the Federal Records Act obligation on the part of the department or FOIA obligation and I don't know. That's correct. We've just tried, as I said at the outset, our approach to all of these cases from the beginning has just been to get through them. We understand that, yeah. And all of Secretary Clinton's emails that were returned in December 2014 are now posted on the website. They're available for anyone to search. We've just tried to put it all behind us. And in service of that, there are a lot of questions that we could have litigated or fought over that we just haven't fought over. But, again, I know the court knows this, but I want to be clear. We chose not to file our own petition for writ of mandamus in this case, and for that reason we've not asked the court to grant the Secretary's petition. We're just not taking a position on it. Okay. Okay, thank you, Mr. Schrader. Mr. Kendall, we'll give you back two minutes to rebuttal. Hello? Mr. Kendall? Yes, thank you. You have two minutes to rebuttal, please. I'll be brief. The second question the court has asked the parties to address is how the material to be covered in the deposition of the two petitioners is relevant to the adequacy of the FOIA searches responsive to the requested issue in this case. And the short answer is totally irrelevant. Judge Pillard referred to the status report that the DOJ filed last August. It's Document 133. And the DOJ notes quite pungently that even if the Secretary had used a private server with the specific intent of evading FOIA, which he did not, the case would still be moved because Judicial Watch has gotten all the relief it's entitled to under FOIA. Now, Judicial Watch claims it needs these two depositions so that it can get an order from the district court compelling the State Department to take, quote, further action, close quote. But it never specifies what that further action might be. Indeed, it can't because as the Pompeo litigation establishes, there is nothing more the State Department can do. Now, the short answer is that both petitioners left the State Department in February 2013. They know nothing whatsoever about the searches conducted or about the intent to settle the case. But again, I point out that Judicial Watch has deposed a number of individuals about the searches, including two 30B6 depositions of people at the State Department with knowledge of those searches. So they've got that information already. Thank you very much. Okay. Thank you very much. And thank you to all the counsel for helping us with this matter. The case is submitted.
judges: Griffith, Pillard, Wilkins